Case number 10-0537 Montserrat-Chiraca v. Stephen Miles Would the lawyers who are going to argue the case please come forward and introduce yourself to the court. Brian Barrett, Assistant Attorney General. Martin Healy, representing the plaintiff under Chiraca. We'll proceed. May it please the Court, Brian Barrett, Assistant Attorney General, on behalf of the defendant, Helen Stephen Miles. In a jury trial, every party is entitled to a full, fair comprehension and evaluation of the evidence. In this case, defendant Miles was denied such a full, fair and comprehensive review of the evidence when his jury instruction number 13 was refused. I think it's undisputed that under the law, since the case was consolidated for all purposes, both claims and cross-claims against each plaintiff and defendant, it was the same as a counterclaim and the proper instruction that should have been tenored was IPI 21.04.1, which sets forth to the jury the four different options that the jury can award. In this case, the four options were that the jury could find for Chiraca against Miles, for Miles against Chiraca, against both, i.e. both had failed to meet their burden of proof, or it could find for both. Do you think this jury was confused? I think if the jury had all of the options, the case could have come out very differently, Your Honor, because all of the jury instructions channeled the jury's decision-making into either a for one or against the other. Had the jury the four options in front of it, it might have reached a very different result. Is there anything in the verdict that would show some confusion here? I think the very fact that it was an improper jury instruction as a matter of law and that the instructions themselves didn't give them a choice, they only had a choice, for one and against the other, or for the other and against the one. And the fact that they should have been given this choice and they weren't, I think is prejudiced enough to the jury. The evidence here, I mean, as in all other cases- That's what I'd like to know about. How was the defendant prejudiced? Well, I think the defendant was prejudiced because the defendant did not have the opportunity to say, to have the jury decide, you both lost. Neither of you has met your burden of proof in this case. That would be the third problem with the jury instructions. Now, the fact that the jury could have decided you both won, since the defendant, Miles, is also a plaintiff, Miles, could have been prejudiced to Miles, the plaintiff. And a prejudice to one is a prejudice to all. I think the case law is fairly clear. If the trial isn't fair to all parties in the case, you get a new trial out of that. You don't just pull out and isolate the verdicts. And as in all auto cases, this is a classic who had the red light case, the evidence is- Green light, though. Green light. Green light. Who had the green light, who had the red light. I mean, the evidence- It's a light case. It's a light case. An intersection light case. And the evidence in these cases is always going to be contested. It's based mostly on eyewitness testimony. There was, you know, some discrepancies and inconsistencies and disagreements over what color the light was. There was, you know, evidence that, for example, nobody saw Mr. Shrocka's Suburban drive by them in the right lane. There was evidence over whether- Remember, Mr. Toys, who was northbound at the intersection, said he had the red light, he was waiting for Mr. Miles' truck to clear the intersection, and Miles was in the intersection first. There was evidence that there was a car in the left turn lane, in the southbound lanes, which may have- So the jury heard all this. Pardon? The jury heard all this. The jury heard all this. That's correct. And the jury- And we're not contesting the manifest weight of the evidence here, but what we are contesting is that the jury should have been given the option to decide that no one met their burden of proof here, that both parties had lost. And that's where the prejudice to Mr. Miles lay. You're basically arguing that this is a structural error. Certainly. I mean, it's, you know, as if it's an error, a legal error, that the jury was required to have these four options put in front of them and make this decision. They didn't have that option, and therefore Mr. Miles was entitled to a new trial. Again, you know, the question- I know that the plaintiff has brought up the question of his standing as the defendant, but as long as he was prejudiced by this verdict, he has standing, and this Court certainly has the authority to order a new trial in this case. And I just want to- Let me turn to the remitter argument. The diminished ability- The loss of normal life damages is defined as, as we know, the diminished ability to enjoy life that the plaintiff has experienced. It's not economic damages. It's not compensatory damages. There's also other non-economic damages in jury trials, pain and suffering. Here there's a ward for medical care- you know, past and future medical care. There's a ward for pain and suffering. And it's our position that the damages were overlapping. The jury heard too much evidence of economic loss, of his job history, his work history, and it wasn't simply evidence that he enjoyed working in his job, he enjoyed working with his hands. It went beyond that. It was, I started in the shop, I swept floors, I learned the machinery, I worked in the drafting, I take over the business. You don't think a plaintiff is allowed to testify to those things? I think that there's a limit. Unless you're asking for compensation, lost income, I think there has to be a limit in- You have a case that shows that there should be a limit, that a plaintiff can't tell his side of the story? He can tell his side of the story, and I understand that he can- I mean, it's the jury's job to sort out what bucket we're going to put all these damages in. Some of this is going to be loss of normal life. Well, the damages are one thing, but this is America. I think people do get a right to tell their side of the story, unless you could show me a case that limits a side of the story. Well, they get a right to tell their side of the story, but you can't conflate economic damages and non-economic damages, and that's what was done here. It was a way to get in economic damages through the back door, by emphasizing his work history, his business history, his job history, not simply in a sense of, it went beyond, I love my work. Were there objections to that test? Yes, there were objections. It was objected to throughout the trial. The objection was actually even stronger than the position of taking an appeal. The objection was, this is irrelevant. We're not taking a position that's totally irrelevant. We understand that, to a certain degree, people love their work, and a loss of normal life damages is certainly not inappropriate to say for a plaintiff to testify, yeah, I enjoyed my work, it gave me fulfillment. But what's not okay is for somebody to testify to sort of remove economic damages through the back door, and that's where the evidence comes in. Didn't the judge admonish the jury regarding that, that what they were hearing regarding his work history was not to be considered for economic damages? The judge said there is no lost income claim here. I don't know that the judge said that as far as I know. Similarly, you have something like the plaintiff asserted that this loss of normal life damages is supported by things like, he had to wear the turtle shell device, he had all this rehab to go to, he had all this medical care. Well, he was compensated for medical care. He was compensated for medical care. And again, we recognize that it's the jury's job to decide which bucket each of these testimonies can go in to show damages, but at a certain point you can't have everything in every bucket at the same time. The jury has to separate out, and given the gross discrepancy between the loss of normal life damages and the damages for pain and suffering and for future medical care, the only conclusion we can reach is that the jury was double counting the damages. The jury did not understand that you can't double count damages and triple count damages. And for that reason, we think that if the court is not going to direct a new trial in this case, the court should at least direct a remit of the loss of normal life damages. And that's what we request. I will reserve the balance of my time for rebuttal. Thank you. Thank you, Phil. Mr. Ailey. Good morning, Your Honors. As counsel indicated, two issues before the court, one having to do with jury instructions, the other one having to do with the loss of normal life. We believe that as to both, there were waivers of those arguments, even though our position is that there's no merit to either one, we believe that there was a waiver as to both. Miles argues, as did counsel here in briefs and oral, that there was only an either-or proposition in the jury instructions. That is simply not the case. They proposed a jury instruction, B2104, which is a burden of proof jury instruction. And this is really where all the problem arises. That particular instruction that they stuck with, and that in the end we didn't really object to, the substance of which we didn't. But the title of that instruction, B2104, is burden of proof, counterclaim. One plaintiff, one defendant. The title of that instruction indicates strongly that it is not appropriate in this case. This case was not a counterclaim. It was a consolidation of two independent lawsuits. In addition, there was one plaintiff and two defendants in the Miles lawsuit. It was just inappropriate. Now, there were aspects of that instruction that were really given and were proposed by us in our 4501 instruction, which talks about the instruction on the use of verdict forms. That instruction gave to the jury the option of going four ways. We gave them four verdict forms, A, B, C, D. They used A and D. There was no restriction on how they could use those forms. They had the four options that counsel was arguing for. They got exactly what the defendant wanted in this case. Because it's what we wanted. Everyone wanted the jury to be instructed that way, that they had all those options. They could find four plaintiffs against another defendant, for the opposite plaintiff against the other defendant. They could find four both plaintiffs, and they could find them against both plaintiffs. And that covered the full gamut. We wanted it. They wanted it. The jury was instructed that way. As to that particular instruction, we gave our 4501. It divided the two cases into separate cases, gave the instructions for both. You can find for the plaintiff. You can find for the defendant within each case. In addition to that instruction, the court gave a 4104 instruction, which also outlined, and it really emphasized to the jury that the rights of the plaintiff are separate and distinct. The court gave an additional instruction, another 4101, that said that the rights of the defendant are separate and distinct. Consider them separately. Finally, the court gave a 4102 instruction that clearly indicated to the jury that if you find for both plaintiffs, you can assess damages separately and return verdicts separately for each one. Now, there is no question in this case that the jury was properly instructed as to that particular issue that counsel raises. I mentioned that we believe there was a waiver in this case. And we say that because during the jury conference, there was a discussion, a long discussion about this particular case and about the instructions. And trial counsel asked the court, could I take a short break when we're talking about these four jury verdict forms? Trial counsel for whom? I'm sorry? Trial counsel for whom? Oh, I'm sorry, for Miles. I'm sorry, Your Honor. There are many parties here. Yes, the attorneys that are here against me this morning. Another attorney, but from the same office. I understand. At any rate, there was a break taken, and they went into the conference room. They came back out, and they represented to the court, trial counsel or lead counsel, that upon further review, it looks like it would suffice. Now, I think counsel has raised an issue that the it didn't refer to that discussion. Well, that's exactly what the court's response was, okay, then fine. We're going to give the 4501, and we're giving the four separate verdict forms. Later on in the jury conference, the court stated to all counsel, without any response by any or any objection, that everyone pretty much agrees to these instructions. The court wanted to be very clear about this. The court was very careful. Everyone in that courtroom was very careful about these instructions. We wanted this jury advised fairly and appropriately. Counsel indicated that this is a light case, Your Honor, indicated that there was some discrepancy. And there was. This was a hard-fought case over a two- or three-week period of time. There were experts on both sides, many witnesses. But in the end, despite the fact that very few saw the actual collision, the circumstantial evidence pointed strongly to Plaintiff Schrocker, that when he came into the intersection, the light was green for him. And the experts concluded that. I bring that up because any slight... You don't think this is in effect. You don't think that this is a case involving just... I'm sorry? Law. Didn't involve... That this case doesn't involve a pure question of law. No. No. This is a, Your Honor, this is an abuse of discretion issue. And I think that's very important, the instructing the jury based on... Yes. Well, as to... I think that's where we have to start. We have to start with his position that this is a de novo review. But a de novo review of what? Well, if it were de novo, Your Honor, a viewing of the instructions, I think will indicate strongly that, in fact, the jury was properly instructed. We are talking about, for the most part, and there was some modification, but for the most part, these were IPI, right out of IPI. And the one that they brought out of IPI, which I grant them was an IPI, was clearly on its face under the law and appropriate for this fact situation. Those errors were pointed out to counsel. Counsel was given an opportunity to revise that 2104 and did not revise the 2104. Never submitted a revised 2104 that may have been acceptable to plaintiffs and to everyone else in the courtroom. That wasn't done. At any rate, Your Honor, on the second issue, which is also an abuse of discretion issue, this is asked to the remitter. It goes to the loss of a normal life. And what is unique about this, Your Honor, is that in the post-trial motion, it was specifically requested of the court below. And obviously, this appeal arises from the denial of that post-trial motion. But below, counsel argued and requested, As such, Defendant Stephen Miles requests this honorable court to reduce the award for past and future loss of normal life to $1 million. The issue before this court is not whether there should be a general remitter. The issue is whether it was an abuse of discretion not to lower that loss of a normal life verdict down to $1 million. And I believe clearly that it was not an abuse of discretion. And that's what plays in there. That's in the post-trial motion very clearly. There was an opportunity in the argument on the post-trial motion where counsel stuck to his guns on that issue. In the argument on the post-trial motion below, stated that loss of a normal life be reduced, this is his request, to $1 million for the reasons we have stated in our briefs. That is the issue before you. And it is clearly not an abuse of discretion not to have lowered this amount to $1 million. I think counsel has kind of conceded that, and it really hasn't been an issue, that loss of a career is part of a loss of a normal life. If it meant a lot to you and it was something you enjoyed doing, by the very definition of the IPI definition of loss of a normal life, it's the loss of pleasurable aspects of life. In this particular case, there was a career that began for Andre Scirocco when he was a young man. He worked for his father. They did fine woodwork that you see in this courtroom here, and he loved it. And he did it from the time he was a teenager, worked in the factory when he was 12 years old. That was part of his life. It was a pleasurable part of his life. And there's really, I guess, no argument that, in fact, it was part of the case and appropriately in the case. The argument seems to be that they heard too much about this career. We did put on, obviously, the plaintiff himself and his sister, and they did talk about his career and how much he loved doing this kind of work. When it came in, there were certain objections. There was no consistent objection to that testimony. Much of it came in without objection. There was no request on the part of a trial counsel for a continuing objection to this, and there was no request on the part of a trial counsel for additional limiting instructions. But what the court did was go beyond, I think, what was necessary in the case. The 3001 series or the 30 series on IPI lists all of the various damages that are being requested and that are supported by the evidence. In this case, we never submitted any element for loss of wages or loss of income. They never got it. But the court went beyond that. The court orally told the jury three times, that is not an issue for Andre Schraka. It is not in this case. It went beyond that. In addition to the oral, the court added to another, the 3401, added additional language which stated, Andre Schraka is not making a claim for past or future loss of earnings. It couldn't have been clearer to this jury. Loss of earnings were not part of this case, and they did not creep into the loss of a normal life. In this particular case, I know the court will take a look at the Richardson Supreme Court case on this particular issue as to remitting damages. The court stated pretty clearly that it's reserved for the trial effect. The appellate court will not substitute its opinion about it, unless it is so excessive that it was moved by passion and prejudice or exceeds the necessary flexible limits of fair and reasonable compensation or shocks the judicial conscience. This award in this particular case does not shock the judicial conscience. Richardson case came out of Cook County, was, in fact, had damages in excess of our damages affirmed by the court, by the Supreme Court with that particular language. In our particular case, for loss of a normal life, we requested of the jury $25 million, which we felt was appropriate. They cut that down. They eventually awarded $18 million. This was a thinking jury, a well-informed jury. They found us contributorily negligent. My client, contributorily negligent, 5%. They adjusted all the figures. Nothing was done carte blanche. This was a very aware jury. In this particular case, the evidence they heard supports, clearly supports the award of damages in this case. We had a paraplegic. He had six years of past and almost 40 years into the future life expectancy that he will go through life as a paraplegic. There was uncontested testimony that his disability will increase as he ages and that eventually he will need 24 hours of care. I think the baseline for any loss of normal life has to be what you did before the accident. This particular individual, Andres Schraka, was very active. He was an athlete in high school, played football, hockey. He was a swimmer, golfer, skier, loved to travel. All of those things you cannot do and won't be able to do for the rest of his life. His wife testified that he's just the total opposite of what he used to be as far as activities go. I hate to interrupt you. We did read all that because it's in your brief. No one has mentioned either side of the video that this jury was able to see. I'm sorry? I said no one has mentioned the video that this jury was able to see. Right. The video is not in the – there's been no mention one way or the other? I haven't heard anybody say it. I looked at the video. The jury saw the video of his normal life, of what he does every day. Correct. Yes, it's in there, Your Honor, and there was no objection to it as I recall. No, I'm not saying there's an objection. I'm saying you're telling us everything that is in the brief. Your Honor, I'm going to be real brief, Judge. I'm not going to extend this out. I'm really trying just to wrap it up. But my point, though, is that even if this court were to consider not the abuse of discretion but to whether to remit generally, it is supported by the evidence that was adduced at trial. And for those reasons, Your Honor, I believe that the case should be affirmed. Thank you for your time. Thank you. Your Honor, the jury verdict forms did not cure any error or failure to give IPI, error to give the miles to the chief. All of the jury verdict forms said, you find four of the plaintiff of Oshraka against defendant Miles, four miles to Oshraka. There was nothing that would have, I mean, maybe a more, maybe a very super sophisticated jury might have said, oh, can we do this, can we find four both or four neither. But there was nothing that channeled their decision-making in that way. There was no waiver of the offer of IPI-13. There was a discussion after the jury verdict forms. We agreed to at least jury verdict form A or didn't object to jury verdict form A. The court then asked counsel if he still wanted to IPI-13, and counsel said, yes, judge, I still want that. And that's after this discussion of the verdict form. That's at 526, reporter proceedings four. I mean, at a certain point, you know, for counsel to continue to object to something which is a foregone conclusion, I don't think you're required that to preserve your issues on appeal. The court had made its decision. It didn't have to, the counsel wasn't required to beat his head against the wall. Likewise, with the objection to economic damages discussion, there was a motion to eliminate before trial that was denied. Objections were made before, most of the work history came in the testimony of Danuta Lowe and Mr. Schrock's sister. An objection was raised during that testimony. An objection was raised during Dr. Garconi's testimony, who was one of the experts as to the ability to work. Yes, there was expert testimony in this case, but the experts couldn't even agree as to whether it was even possible to reconstruct the traffic lights. But Mr. Schrock, his expert, said he could and decided it one way. The Miles expert said it wasn't even possible to do this. Again, as far as the remittiture goes, in the post-judgment motion, we asked for a remittiture for $1 million, to $1 million at that point. But that doesn't waive either. If the court wasn't required to grant a remittiture only to $1 million, it could have granted a remittiture to some other amount. So I don't think we're waived from generally asking for a remittiture in this court, and nor is it beyond this court's power under Rule 366.8.5. Again, counsel stresses the fact that Mr. Schrock is going to require extensive medical care for the rest of his life. I think that just brings up the point that the jury compensated Mr. Schrock for past and future medical care. We're not appealing that decision. And if they're adding medical care to loss of normal life, then that's double counting of damages. With that, I would just again ask that this court either grant us a trial or grant a remittiture in this case. Thank you very much. It was a very interesting case, and the briefs were very good, and we're very pleased with your oral arguments. We'll take the case under advisory. Thank you very much. Court is adjourned.